UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLEN YOUNGDAHL,

   *Plaintiff*,

v.

EQUIFAX INFORMATION SERVICES, LLC, *and*
PARTNERS CREDIT AND VERIFICATION SOLUTIONS, LLC,

   *Defendants*.

Case Number: 6:22-cv-00933

**Jury Trial Demanded**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Allen Youngdahl ("Mr. Youngdahl"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services, LLC ("Equifax") and Partners Credit and Verification Solutions, LLS ("Partners Credit") (jointly, "the Defendants"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Youngdahl against Equifax and Partners Credit for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. The Defendants are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by the Defendants within Orange County, Florida, which is in the Middle District of Florida.

## PARTIES

5. Mr. Youngdahl is a natural person residing in Orlando, Orange County, Florida.

6. Mr. Youngdahl is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Equifax is a Georgia corporation, with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

8. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9. Equifax is a nationwide Credit Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses

various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

10. Partners Credit is a California limited liability company with a primary business address of 65 E Wacker Place, Suite 1405, Chicago, IL 60601.

11. Partners Credit is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

12. Partners Credit is also a CRA within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages, in whole or in part, in the practice of assembling and/or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce, including the postal mail and internet, for the purpose of preparing and furnishing these consumer reports.

## FACTUAL ALLEGATIONS

### Defendants Produce Clearly Erroneous Report on Plaintiff

13. On or about March 21, 2022, Mr. Youngdahl sought to obtain a mortgage from Premier Mortgage Services ("Premier Mortgage") to purchase a home for him and his wife.

14. In order to review Mr. Youngdahl's credit, Premier Mortgage requested a consumer credit report from Partners Credit.

15. Partners Credit, in turn, obtained a consumer report regarding Mr. Youngdahl from each of the three major CRA's – Equifax, Trans Union, and Equifax.

16. Partners Credit then merged this information into one single report, which it provided to Premier Mortgage. SEE PLAINTIFF'S EXHIBIT A.

17. Equifax's consumer report to Partners Credit contained the entire credit history of another, unrelated individual, Mark Alan Gibbs ("Mr. Gibbs").

18. Equifax's consumer report falsely indicated that Mr. Youngdahl owned a home for which he was required to make $2,171 per month payments to Wells Fargo and had a car loan with Wings Federal Credit Union which required him to make $530 per month payments.

19. Equifax's report indicated that Mr. Youngdahl had a total of 18 accounts which were not actually his (the "**False Accounts**").

20. The False Accounts belonged to Mr. Gibbs – not Mr. Youngdahl.

21. By reporting these False Accounts, several of which included substantial balances, Equifax indicated that the amount owed by Mr. Youngdahl to various creditors, and the monthly payments which Mr. Youngdahl was obligated to make, were substantially higher than they actually were.

22. Mr. Youngdahl's lender was obligated to factor these monthly payments into Mr. Youngdahl's debt-to-income ratio calculations.

23. As a result of the false information contained within Equifax's consumer report, Premier Mortgage denied Mr. Youngdahl's application.

24. Experian and Trans Union, despite being provided the identical input information, returned reports concerning Mr. Youngdahl, and not Mr. Gibbs.

25. On information and belief, Equifax's consumer report was a textbook example of a "bad hit" – a credit report which contains information about a different person, rather than the individual about whom it was requested.

26. The bad hit resulted from Equifax's reckless and improper methods by which it connects data reported to it by various furnishers to its internal files.

27. In an aggressive attempt to match every record reported, Equifax's automated systems often erroneously match tradeline information to a consumer's credit file with minimal commonalities – even if the tradeline data contains a substantially different name, date of birth and Social Security number than the target consumer's.

28. In the instant matter, Equifax's systems apparently matched Mr. Gibbs, of Minneapolis, Minnesota, with Mr. Youngdahl, on little more than the fact they share a similar, but not identical, Social Security number.

29. Mr. Youngdahl lives in Orlando, which is approximately 1,574 miles from Mr. Gibbs's residence in Minneapolis.

30. Equifax, as a CRA, has a legal obligation to use reasonable procedures to ensure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1681e(b).

31. Equifax failed to use reasonable procedures in producing the consumer report regarding Mr. Youngdahl to Partners Credit, for use by Premier Mortgage, as

any reasonable procedure would have determined that Equifax's information concerned an unrelated individual.

32. Equifax is aware that its automated systems often erroneously match tradeline information to a consumer's credit file with minimal commonalities – even if the tradeline data contains a substantially different name, date of birth and Social Security number than the target consumer's.

33. Indeed, Equifax maintains and staffs *an entire department* devoted to "mixed" file errors.

34. Despite such knowledge, Equifax has yet to change its systems, which often match a consumer's data with the information in its files based on one data point, such as SSN, instead of utilizing all of the information provided to it by an applicant.

35. Equifax could reasonably foresee that selling reports which contained numerous debts belonging to an unrelated individual would cause significant harm to Mr. Youngdahl.

36. Equifax could reasonably foresee that producing credit reports which contain the credit data belonging to the holders of other accounts would likely cause harm to the consumer for whom the report is created and for others whose information is thereby improperly disclosed.

37. Equifax thus acted willfully, or in the alternative, with gross recklessness.

**Partners Credit Knowingly Supplies Bad Data to Plaintiff's Lender**

38. Equifax, Experian and Trans Union (the "Big Three") each sell credit information to paying subscribers (i.e., lenders, retailers, landlords, potential employers, and others), concerning individuals who may be applying for a mortgage, other credit, housing, or employment.

39. The Big Three also sell credit information to "reseller" CRAs, such as Partners Credit, who assemble and merge the credit information obtained from the Big Three into a three-bureau credit report, also known as a "tri-merge" or "merged infile" credit report.

40. Partners Credit combines this information, adds its own summary of the three bureaus' data, and then sells the completed report to mortgage lenders throughout the country.

41. The information sold by the Big Three to Partners Credit, and the information sold by Partners Credit to the end user, both constitute a "consumer report" as defined by the FCRA, 15 U.S.C. § 1681a(d).

42. Lenders use tri-merge reports because they want to review credit information from each of the Big Three to ensure that they do not make loans based on an incomplete picture of the credit applicant's financial position.

43. Lenders who use tri-merge reports rely on credit scores generated by running standard algorithms against *each* of the Big Three's credit files.

44. Tri-merge reports often contain three credit scores (one for each bureau), with the difference in scores being accounted for by variations among each bureau's data, as well as differences in the scoring algorithm.

45. The process by which the Big Three receive, sort, and store information is, with very limited exception, completely automated and computerized.

46. The Big Three take the credit, public record, and other information reported by furnishers and use it to create consumer credit files.

47. When Partners Credit requests credit information from the Big Three for a particular consumer, the Big Three send raw credit data to Partners Credit electronically.

48. After receiving the raw credit data from the Big Three for a particular consumer, Partners Credit assembles, merges, normalizes, and summarizes that data into a tri-merge credit report.

49. However, Partners Credit does nothing to ensure that the credit information it receives is, in fact, accurate.

50. Partners Credit does nothing on its own to analyze the accuracy of the underlying credit data it receives from the Big Three, instead accepting it at face value.

51. Partners Credit does not take any action to determine if the information it receives from one of the Big Three is facially incompatible with information received from another of the Big Three – such as Equifax producing a report for a

Mark Gibbs of Minneapolis, with Experian and Trans Union producing a report for an Alan Youngdahl of Orlando – despite the identical input criteria.

52.     As aforementioned, Process Credit is itself a "consumer reporting agency" as per 15 U.S.C. § 1681a(f).

53.     Process Credit therefore has a legal obligation to use reasonable procedures to ensure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1681e(b).

54.     Process Credit failed to use reasonable procedures in producing the tri-merge report regarding Mr. Youngdahl, as any reasonable procedure would have determined that Equifax's information concerned an unrelated individual.

55.     Partners Credit is aware from the thousands of reports it sells each day that the Gibbs-related accounts – e.g. Wells Fargo, Kohls, US Bank, etc. – are from major corporations who report to all three of the Big Three.

56.     The presence of *all* of these tradelines on only a *single* CRA's report would be highly anonymous in and of itself.

57.     Partners Credit has expended considerable time and resources into automated systems that make the CRA data visually appealing and easy-to-read by mortgage brokers – endeavors which result in increased sales – but substantially less into systems designed to detect errors in data, even when blatantly obvious.

58.     Partners Credit thus acted willfully, or in the alternative, with gross recklessness.

59. As a result of the Defendants' conduct, Mr. Youngdahl has been denied a mortgage and has been unable to apply for new credit.

60. Mr. Youngdahl has also suffered from embarrassment and extreme emotional distress, has spent time and money to attempt to correct his file and force the Defendants to comply with their statutory obligations, and has spent time and money in procuring counsel.

61. Mr. Youngdahl has hired this law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## EQUIFAX'S VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)

62. Mr. Youngdahl adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

63. Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report by matching and including information concerning another consumer, Mr. Gibbs, on a report concerning Mr. Youngdahl.

64. Equifax's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

65. Equifax is thus liable to Mr. Youngdahl, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Youngdahl's actual damages and statutory damages of up to

$1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

66. Alternatively, Equifax acted negligently and is thus liable to Mr. Youngdahl, pursuant to 15 U.S.C. § 1681o, for Mr. Youngdahl's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Youngdahl respectfully requests this Honorable Court enter judgment against Equifax for:

a. The greater of Mr. Youngdahl's actual damages and statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Youngdahl's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## PARTNERS CREDIT'S VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)

67. Mr. Youngdahl adopts and incorporates paragraphs 1 - 61 as if fully stated herein.

68. Partners Credit violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report by including information furnished to it from Equifax which concerned another

consumer, Mr. Gibbs, on a report concerning Mr. Youngdahl, despite receiving contradicting reports from both Trans Union and Experian.

69. Partner's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

70. Partners Credit is thus liable to Mr. Youngdahl, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Youngdahl's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

71. Alternatively, Partners Credit acted negligently and is thus liable to Mr. Youngdahl, pursuant to 15 U.S.C. § 1681o, for Mr. Youngdahl's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Youngdahl respectfully requests this Honorable Court enter judgment against Partners Credit for:

    a.    The greater of Mr. Youngdahl's actual damages and statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Youngdahl's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Youngdahl hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **May 24, 2022**, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Attorney for Plaintiff

**EXHIBITS**
A   TriMerge Report Regarding Mr. Youngdahl, March 21, 2022, Excerpt